IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

RONALD T. ENGVOLDSEN and PATRICIA ENGVOLDSEN,

PLAINTIFFS,

VS.

THE BANK OF NEW YORK MELLON, *f/k/a* THE BANK OF NEW YORK, As Trustee for the Certificateholders of CWABS INC., Asset-Backed Certificates, Series 2007-SEA1, Acting through its Servicing Agent, BAYVIEW LOAN SERVICING, LLC, and the INTERNAL REVENUE SERVICE,

DEFENDANTS

CIVIL ACTION FILE

NO. ______________

**COMPLAINT**

NOW COME the Plaintiffs, RONALD T. ENGVOLDSEN and PATRICIA ENGVOLDSEN, and bring this, their complaint against THE BANK OF NEW YORK MELLON *f/k/a* THE BANK OF NEW YORK, As Trustee for the Certificateholders of CWABS INC, Asset-Backed Certificates, Series 2007-SEA1, Acting through its Servicing Agent, BAYVIEW LOAN SERVICING, LLC, and the INTERNAL REVENUE SERVICE and, in support thereof, show:

1. That the Plaintiffs are resident of Augusta, Richmond County, Georgia in the Southern District of Georgia, and Defendant The Bank of New York Mellon *f/k/a* The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-SEA1, Acting through its Servicing Agent, Bayview Loan Servicing, LLC ("Defendant Bank

of New York Mellon") is a non-resident of the State of Georgia, and jurisdiction over this matter would in part be based upon diversity of citizenship under 28 U.S.C. §1332, in that the property involved is worth substantially more than $75,000. Jurisdiction against the Defendant Internal Revenue Service ("Defendant IRS") is based in part upon federal question jurisdiction under 28 U.S.C. §1331 and under 28 U.S.C. §1340, since this case does involve a federal tax lien.

2.     That Bayview Loan Servicing, LLC, acting as Agent of Defendant Bank of New York Mellon, is a limited liability corporation doing business in the State of Georgia that can be served by serving its registered agent for service of process, Corporation Service Company, 40 Technology Parkway, South #300, Norcross, Georgia 30092.

3.     That Defendant IRS can be served by serving Mr. Edward Tarver, United States Attorney for the Southern District of Georgia, United States Courthouse, 600 James Brown Blvd., Augusta, Georgia 30901, and by serving the Internal Revenue Service at its offices in Augusta, Georgia.

4.     That venue is proper in the United States District Court for the Southern District of Georgia, in that the transaction deriving under the Plaintiffs' claim arose in the Southern District of Georgia and venue is proper under 28 U.S.C. §1391.

5.     That Plaintiff Ronald T. Engvoldsen ("Plaintiff Ronald Engvoldsen") entered into a certain Security Deed with an adjustable rate – all as shown by Exhibit "A" attached hereto.

6.     That Plaintiff Patricia Engvoldsen ("Plaintiff Patricia Engvoldsen") is the owner of interest in said property described in Exhibit "A" by virtue of a unrecorded deed from her husband, Defendant Ronald Engvoldsen.

7. That subsequent to entering into said Security Deed (Exhibit "A"), said Security Deed was transferred and assigned to the Plaintiffs in the above-captioned case, with Bayview Loan Servicing, LLC acting as the loan servicer – all as shown by Exhibit "B" attached hereto.

8. That the Plaintiffs in this case have historically rented their home during the Masters Golf Tournament in Augusta, Georgia for less than fourteen (14) days for which they receive certain 1099s for rental paid.

9. That the Plaintiffs did not properly inform Defendant IRS of said 1099s, in that such rental would not be considered income under the Internal Revenue Code because their home has been rented for no more than fourteen (14) days.

10. That as a result of the Plaintiffs not informing Defendant IRS, they had a certain tax lien filed against them for certain past due taxes – all as shown by Exhibit "C" attached hereto. To the extent that their taxes are not owed, this lien should not be considered a lien against the real estate and that lien should be corrected to reflect exactly what taxes are owed, excluding 1099s for rental during the Masters Golf Tournament.

11. That prior to any foreclosure, the Plaintiffs contacted Mr. Robert Tyer of Bayview Loan Servicing, LLC, submitted an application for refinance – all as shown by Exhibit "D" attached hereto, and were making an effort to have the home refinanced so to avoid any foreclosure.

12. That the Plaintiffs contacted the local office of Congressman John Barrow because the loan is a federally insured mortgage loan and sought help from his Assistant, Ms. B. K. Herrington.

13. That Ms. B. K. Herrington called Mr. Robert Tyer and was assured by Robert Tyer that the foreclosure was not set for the first Tuesday in December 2014.

14. That such information was conveyed to the Plaintiffs and the Plaintiffs relied upon that information and did not take any action to file any Chapter 13 Bankruptcy or take other action to try to forego the foreclosure while they worked out their problems.

15. That the real property is valued in excess of $400,000, but had a debt on it for substantially less than $200,000 owed on the mortgage and Security Deed (Exhibit "A").

16. That unbeknownst to the Plaintiffs, Defendant Bank of New York Mellon, acting through its lawyers, had contacted the Internal Revenue Service and, pursuant to 28 U.S.C. §7425, advised Defendant IRS that it was proceeding with the foreclosure and indicated that the approximate balance was $106,000 plus $65,802 in interest and attorney's fees of $2,500 – all as shown by Exhibit "E" attached hereto.

17. That despite the assurances that had been given the Plaintiffs by Bayview Loan Servicing, LLC that there was no foreclosure set on the first Tuesday in December 2014, Bayview Loan Servicing, LLC, acting for Defendant Bank of New York Mellon, proceeded to foreclose the property and had said property deeded to Defendant Bank of New York Mellon – all as shown by Exhibit "F" attached hereto.

18. That the foreclosure was not conducted in a fair and reasonable manner and Defendant Bank of New York Mellon, acting through Bayview Loan Servicing, LLC, did not act in good faith and did not properly exercise the Power of Sale in such a form or fashion as required by anyone acting as attorney in fact or Power of Attorney coupled with an interest.

19. That the foreclosure by Defendant Bank of New York Mellon should be set aside.

20.     That the lien of Defendant IRS should be decreased so that it only reflects income owed – not unreported Masters rental money.

21.     That this Court should issue an Order setting aside the non-judicial foreclosure by Defendant Bank of New York Mellon cancel the Deed Under Power (Exhibit "F"), protect the interest of the Plaintiffs in said property and protect the interest of Defendant IRS to the extent that taxes are in fact paid.

22.     That this Court should declare the rights of the parties in said property and their respective interest.

WHEREFORE, Plaintiffs pray:

(a)     That process issue requiring that both Defendants be served a copy of this complaint;

(b)     That the Court determine that the non-judicial foreclosure conducted by Defendant Bank of New York Mellon was improper or inequitable and contrary to the assurances that were given by Bayview Loan Servicing LLC to Plaintiffs' inquirer, Ms. B. K. Herrington of Congressman John Barrow's office;

(c)     That the Court void the Deed Under Power (Exhibit "F");

(d)     That the Court determine the true amount of the lien of Defendant IRS, taking into consideration any portion of said lien that consisted of non-taxable money received from the Masters Golf Tournament rental, and protect the interest of Defendant IRS and that of the Plaintiffs;

(e)     That the Court enter such other Orders that are fair and equitable in this case.

This 14th day of May, 2015.

/s/ ***JOHN B. LONG***

JOHN B. LONG, ESQ.
Georgia State Bar No. 457200
Attorney for Plaintiffs

OF COUNSEL:

TUCKER LONG, P.C.
P. O. BOX 2426
453 GREENE STREET
AUGUSTA, GA 30903
(706) 722-0771
(706) 722-7028 Fax

Instrument Number: 2007019480 Book/Page: 01111/0488 Date Filed: 03/21/2007 14:43:27.00

After Recording Return To:
CASTLE POINT MORTGAGE, INC.
7 ENTIN ROAD
PARSIPPANY, NEW JERSEY 07054
Loan Number: 0070300035

Book 01111:0488 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00
$348.00 SECURITY DEED
2007019480 Augusta - Richmond County
Intangible Tax: $300.00

ANDREW J. KILPATRICK, II
ATTORNEY AT LAW
3 GEORGE C. WILSON COURT
AUGUSTA, GEORGIA 30909

07-102-R

[Space Above This Line For Recording Data]

# SECURITY DEED

TUCKER LONG, Jack Long, 04/01/2015 11:05:43

Elaine C. Johnson, Richmond County Clerk of Superior Court

**MIN:** 1002735-0070300035-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated MARCH 16, 2007 , together with all Riders to this document.

**(B) "Borrower"** is RONALD T ENGVOLDSEN, A MARRIED MAN

Borrower is the grantor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is CASTLE POINT MORTGAGE, INC.

Lender is a MARYLAND CORPORATION organized and existing under the laws of MARYLAND . Lender's address is 6800 DEERPATH ROAD, SUITE 105, ELKRIDGE, MARYLAND 21075

**(E) "Note"** means the promissory note signed by Borrower and dated MARCH 16, 2007 . The Note states that Borrower owes Lender ONE HUNDRED THOUSAND AND 00/100 Dollars (U.S. $ 100,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 1, 2037 .

EXHIBIT
tabbies
A

This document is not to scale.

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [X] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [X] Other(s) [specify] ACKNOWLEDGMENT WAIVER RIDER

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) **"Escrow Items"** means those items that are described in Section 3.
(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of RICHMOND [Name of Recording Jurisdiction]:

TUCKER LONG, Jack Long, 04/01/2015 11:05:44

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Book 01111:0490 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 024-2-021-00-0

which currently has the address of 525 WINCHESTER DRIVE [Street]

AUGUSTA [City], Georgia 30909 [Zip Code] ("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be

TUCKER LONG, Jack Long, 04/01/2015 11:05:45
Elaine C. Johnson, Richmond County Clerk of Superior Court
This document is not to scale.

Book 01111:0491 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00

applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree

TUCKER LONG, Jack Long, 04/01/2015 11:05:46

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any

TUCKER LONG, Jack Long, 04/01/2015 11:05:46

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

TUCKER LONG, Jack Long, 04/01/2015 11:05:47

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

TUCKER LONG, Jack Long, 04/01/2015 11:05:48

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate

TUCKER LONG, Jack Long, 04/01/2015 11:05:49

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's

TUCKER LONG, Jack Long, 04/01/2015 11:05:50

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will

TUCKER LONG, Jack Long, 04/01/2015 11:05:50

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate**

TUCKER LONG, Jack Long, 04/01/2015 11:05:51

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Book 01111:0499 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00

payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

TUCKER LONG, Jack Long, 04/01/2015 11:05:52

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_______________ (Seal) -Borrower
RONALD T ENGVOLDSEN

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

[Space Below This Line For Acknowledgment]

Signed, sealed and delivered in the presence of:

_______________ Unofficial Witness

_______________ Unofficial Witness

_______________ Notary Public
State of Georgia

ANDREW J. KILPATRICK III NOTARY PUBLIC EXP. 12-7-08 RICHMOND COUNTY, GA

My commission expires: _______________

TUCKER LONG, Jack Long, 04/01/2015 11:05:53

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Book 01111:0501 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00

Loan Number: 0070300035

Date: MARCH 16, 2007

Property Address: 525 WINCHESTER DRIVE, AUGUSTA, GEORGIA 30909

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

ALL that lot or parcel of land, with improvements thereon, situate, lying and being in Augusta, Richmond County, Georgia, being shown and designated as Lot 13, Block C, Sections II and III, Waverly Subdivision, on a plat recorded in the Office of the Clerk of Superior Court of Richmond County, Georgia in Realty Book 29-W, page 540. Reference is hereby made to said plats for a more complete and accurate description as to the metes, bounds, courses, distances and location of said property.

Said property is conveyed subject to Protective Covenants recorded in said Clerk's Office in Realty Book 29-W, page 537 and as amended and also subject to any and all easements, reservations and restrictions of record.

Map & Parcel #024-2-021-00-0

A.P.N. # : 024-2-021-00-0

DocMagic eForms 800-649-1362
www.docmagic.com

TUCKER LONG, Jack Long, 04/01/2015 11:05:53

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Instrument Number: 2007019480 Book/Page: 01111/0502 Date Filed: 03/21/2007 14:43:27.00

Book 01111:0502 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00

Loan Number: 0070300035

# ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER

THIS ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER is made this 16th day of MARCH, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to CASTLE POINT MORTGAGE, INC., A MARYLAND CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

525 WINCHESTER DRIVE, AUGUSTA, GEORGIA 30909

[Property Address]

**In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree to the following:**

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THE SECURITY DEED; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THE SECURITY DEED; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THE SECURITY DEED AND THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID SECURITY DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THE SECURITY DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

TUCKER LONG, Jack Long, 04/01/2015 11:05:54

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Instrument Number: 2007019480 Book/Page: 01111/0503 Date Filed: 03/21/2007 14:43:27.00

Book 01111:0503 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered
In the presence of:

Unofficial Witness

RONALD T ENGVOLDSEN (Seal) -Borrower

Notary Public

ANDREW J. KILPATRICK, II
NOTARY PUBLIC
EXP 12-7-08
RICHMOND COUNTY, GA

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
10/31/05
Page 2 of 3
DocMagic eForms 800-649-1362
www.docmagic.com

TUCKER LONG, Jack Long, 04/01/2015 11:05:55

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Book 01111:0504 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00

**CLOSING ATTORNEY'S AFFIDAVIT**

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Acknowledgment and Waiver of the Borrower's Rights" by the Borrower(s), I or a representative of the firm reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Acknowledgment and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Acknowledgment and Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn and subscribed before me this day of MAR 16 2007

Notary Public

SHANNON D HONAKER NOTARY PUBLIC EXP: 5-4-07 RICHMOND COUNTY, GA

Closing Attorney

TUCKER LONG, Jack Long, 04/01/2015 11:05:56

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Instrument Number: 2007019480 Book/Page: 01111/0505 Date Filed: 03/21/2007 14:43:27.00

Book 01111:0505 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00

MIN: 1002735-0070300035-3 Loan Number: 0070300035

# ADJUSTABLE RATE RIDER

## (6-Month LIBOR Index - Rate Caps)

## (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

THIS ADJUSTABLE RATE RIDER is made this 16th day of MARCH, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to CASTLE POINT MORTGAGE, INC., A MARYLAND CORPORATION (CFL # 7981) (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

525 WINCHESTER DRIVE, AUGUSTA, GEORGIA 30909
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 10.250 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st day of APRIL, 2009, and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5120 3/04 Page 1 of 3
DocMagic eForms 800-649-1362
www.docmagic.com

TUCKER LONG, Jack Long, 04/01/2015 11:05:56

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Instrument Number: 2007019480 Book/Page: 01111/0506 Date Filed: 03/21/2007 14:43:27.00

Book 01111:0506 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FOUR AND 875/1000 percentage point(s) ( 4.875 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.250 % or less than 10.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 16.250 %. My interest rate will never be less than 10.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

MULTISTATE ADJUSTABLE RATE RIDER - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5120 3/04
Page 2 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

TUCKER LONG, Jack Long, 04/01/2015 11:05:57

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Instrument Number: 2007019480 Book/Page: 01111/0507 Date Filed: 03/21/2007 14:43:27.00

Book 01111:0507 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

RONALD T ENGVOLDSEN (Seal) -Borrower

______ (Seal) -Borrower

______ (Seal) -Borrower

______ (Seal) -Borrower

______ (Seal) -Borrower

______ (Seal) -Borrower

MULTISTATE ADJUSTABLE RATE RIDER - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5120 3/04 Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

Filed in this office:
Augusta - Richmond County
03/21/2007 14:43:27.00
Elaine C. Johnson
Clerk of Superior Court

TUCKER LONG, Jack Long, 04/01/2015 11:05:58

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

TUCKER LONG, Jack Long, 04/01/2015 11:13:30

Elaine C. Johnson, Richmond County Clerk of Superior Court

Book 01432:0680 Augusta - Richmond County
2014014339 03/13/2014 15:30:07.00
$7.00 ASSIGNMENT
2014014339 Augusta - Richmond County

When recorded mail to:
Corelogic
450 E. Boundary Street
Chapin, SC 29036
Attn: ASSIGNMENT UNIT
28971370

**CORPORATION ASSIGNMENT OF SECURITY DEED**

Document ID # 345167135346565555

For value received, the undersigned THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-SEA1, 9062 OLD ANNAPOLIS RD, COLUMBIA, MD 21045, hereby grants, assigns and transfers to:
THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-SEA1, 1800 TAPO CYN RD, SIMI VALLEY, CA 93063
All its interest under that certain SECURITY DEED dated 3/16/2007, executed by: RONALD T ENGVOLDSEN, A MARRIED MAN, Mortgagor as per SECURITY DEED recorded as Instrument No 2007019480 on 3/21/2007, in Book 01111 Page 0488 of official records in the County Recorder's Office of RICHMOND County,GA.

Tax Parcel = N/A
Original Mortgage $ 108,449.17

Insert Property Address
**525 WINCHESTER DRIVE**
**AUGUSTA, GA 30909**

Together with the note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said SECURITY DEED

Dated: 2/26/14

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-SEA1, By Bank of America N.A., Successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP as Attorney in Fact.

BY [signature] Jennifer Guidicessi VICE PRESIDENT

BY [signature] Melissa A. Taylor, Vice President

WITNESS: [signature] Beverly Brooks

WITNESS: [signature] Matthew Minor

STATE OF CALIFORNIA}
COUNTY OF VENTURA}

On ________ before me, ____________, Notary Public, personally appeared ____________, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the state of CALIFORNIA that the foregoing paragraph is true and correct.

See attached notarial certificate (JG)

Witness my hand and Official Seal:

EXHIBIT
B

This document is not to scale.

Instrument Number: 2014014339 Book/Page: 01432/0681 Date Filed: 03/13/2014 15:30:07.00

Book 01432:0681 Augusta - Richmond County
2014014339 03/13/2014 15:30:07.00

______________________-Notary Public

Prepared by Karla Garcia 1800 TAPO CANYON ROAD, MAIL CODE: CA6-914-01-43 SIMI VALLEY, CA 93063 PHONE # (626) 304-5622

TUCKER LONG, Jack Long, 04/01/2015 11:13:30

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Book 01432:0682 Augusta - Richmond County
2014014339 03/13/2014 15:30:07.00

## ACKNOWLEDGMENT

State of California
County of Ventura )

On FEB 26 2014 before me, Jacqueline Benson
(insert name and title of the officer)

personally appeared Jennifer Guidicessi + Melissa A. Taylor, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JACQUELINE BENSON
Commission # 1963212
Notary Public - California
Los Angeles County
My Comm. Expires Dec 9, 2015

Signature Jacqueline Benson (Seal)
Jacqueline Benson, Notary Public

Filed in this office:
Augusta - Richmond County
03/13/2014 15:30:07.00
ELAINE C JOHNSON
Clerk of Superior Court

TUCKER LONG, Jack Long, 04/01/2015 11:13:31

Elaine C. Johnson, Richmond County Clerk of Superior Court

Book 01382:0503 Augusta - Richmond County
2013012816 02/21/2013 15:17:07.00
$9.00 ASSIGNMENT
2013012816 Augusta - Richmond County

TUCKER LONG, Jack Long, 04/01/2015 10:47:39

Elaine C. Johnson, Richmond County Clerk of Superior Court

13-00163, RONALD T ENGVOLDSEN

Return to: Shuping, Morse & Ross, L.L.P.
6259 Riverdale Road, Suite 100
Riverdale, GA 30274
ATTN: S. Cobb
MIN#:1002735-0070300035-3

# CORRECTIVE ASSIGNMENT

**THIS ASSIGNMENT IS BEING RECORDED TO ADD THE VERBIAGE FOR "THE BANK OF NEW YORK MELLON" AND "INDENTURED" TRUSTEE WHICH WAS MISSING FROM THAT ASSIGNMENT RECORDED NOVEMBER 30, 2007 IN DEED BOOK 1154, PAGE 700, RICHMOND COUNTY, GEORGIA RECORDS**

**FOR VALUE RECEIVED**, the undersigned, being the present owner of such secured interest by virtue of being the original Grantee or the heir, assign, transferee, or devisee of the original Grantee, hereby transfers, without recourse, to The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-SEA1 whose address is PO Box 5170, MS SV314B, Simi Valley, CA 93065 all right, title, interest, powers and options in, to and under that certain Deed to Secure Debt from Ronald T. Engvoldsen to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Castle Point Mortgage, Inc. dated March 16, 2007 and recorded in Deed Book 1111, Page 488, Richmond County, Georgia records, as well as the land described therein and the indebtedness secured thereby.

**IN WITNESS WHEREOF**, the undersigned has hereunto set its hand and seal this 12 day of FEBRUARY, 2013.

**Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Castle Point Mortgage, Inc.**

BY: *Mary Ann Hierman* (SEAL)
Name & Title: MARY ANN HIERMAN ASSISTANT SECRETARY

(Corporate Seal)

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS CORPORATE SEAL 1999 DELAWARE

Witness Aida Duenas

Witness Cecilia Rodriguez

## ACKNOWLEDGMENT

State of California

County of Ventura

On FEB 12 2013 before me, J. Mastrolonardo, Notary Public,
(Insert name and title of the officer)

Personally appeared Mary Ann Hierman Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and the by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person (s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MGC1
J. MASTROLONARDO
COMM. # 1952917
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
COMM. EXPIRES SEPT. 19, 2015

Signature *J. Mastrolonardo* (Seal)
J. Mastrolonardo

Filed in this office:
Augusta - Richmond County
02/21/2013 15:17:07.00
Elaine C. Johnson
Clerk of Superior Court

**This document is not to scale.**

Book 01432:0680 Augusta - Richmond County
2014014339 03/13/2014 15:30:07.00
$7.00 ASSIGNMENT
2014014339 Augusta - Richmond County

When recorded mail to:
Corelogic
450 E. Boundary Street
Chapin, SC 29036
Attn: ASSIGNMENT UNIT
28971370

## CORPORATION ASSIGNMENT OF SECURITY DEED

Document ID # 345167135346565555

For value received, the undersigned THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-SEA1, 9062 OLD ANNAPOLIS RD, COLUMBIA, MD 21045, hereby grants, assigns and transfers to:
THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-SEA1, 1800 TAPO CYN RD, SIMI VALLEY, CA 93063
All its interest under that certain SECURITY DEED dated 3/16/2007, executed by: RONALD T ENGVOLDSEN, A MARRIED MAN, Mortgagor as per SECURITY DEED recorded as Instrument No 2007019480 on 3/21/2007, in Book 01111 Page 0488 of official records in the County Recorder's Office of RICHMOND County,GA.

Tax Parcel = N/A
Original Mortgage $ 108,449.17

Insert Property Address
**525 WINCHESTER DRIVE**
**AUGUSTA, GA 30909**

Together with the note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said SECURITY DEED

Dated: 2/26/14

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-SEA1, By Bank of America N.A., Successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP as Attorney in Fact.

BY [signature] Jennifer Guidicessi, VICE PRESIDENT
WITNESS: [signature] Beverly Brooks

BY [signature] Melissa A. Taylor, Vice President
WITNESS: [signature] Matthew Mercer

STATE OF CALIFORNIA}
COUNTY OF VENTURA}

On ______________ before me, ______________________, Notary Public, personally appeared ______________________, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the state of CALIFORNIA that the foregoing paragraph is true and correct.

See attached notarial certificate

Witness my hand and Official Seal:

TUCKER LONG, Jack Long, 04/01/2015 10:59:26

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

After Recording Return To:
CASTLE POINT MORTGAGE, INC.
7 ENTIN ROAD
PARSIPPANY, NEW JERSEY 07054
Loan Number: 0070300035

Book 01111:0488 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00
$348.00 SECURITY DEED
2007019480 Augusta - Richmond County
Intangible Tax: $300.00

ANDREW J. KILPATRICK, II
ATTORNEY AT LAW
3 GEORGE C. WILSON COURT
AUGUSTA, GEORGIA 30909

07-102-R

[Space Above This Line For Recording Data]

# SECURITY DEED

**MIN:** 1002735-0070300035-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated MARCH 16, 2007 , together with all Riders to this document.
(B) **"Borrower"** is RONALD T ENGVOLDSEN, A MARRIED MAN

Borrower is the grantor under this Security Instrument.
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) **"Lender"** is CASTLE POINT MORTGAGE, INC.

Lender is a MARYLAND CORPORATION organized and existing under the laws of MARYLAND . Lender's address is 6800 DEERPATH ROAD, SUITE 105, ELKRIDGE, MARYLAND 21075

(E) **"Note"** means the promissory note signed by Borrower and dated MARCH 16, 2007 . The Note states that Borrower owes Lender ONE HUNDRED THOUSAND AND 00/100 Dollars (U.S. $ 100,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 1, 2037 .

TUCKER LONG, Jack Long, 04/01/2015 11:05:58

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [X] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [X] Other(s) [specify] ACKNOWLEDGMENT WAIVER RIDER

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) **"Escrow Items"** means those items that are described in Section 3.
(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of RICHMOND [Name of Recording Jurisdiction]:

TUCKER LONG, Jack Long, 04/01/2015 11:05:59

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 024-2-021-00-0

which currently has the address of 525 WINCHESTER DRIVE [Street]

AUGUSTA [City], Georgia 30909 [Zip Code] ("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be

TUCKER LONG, Jack Long, 04/01/2015 11:06:00

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree

TUCKER LONG, Jack Long, 04/01/2015 11:06:01

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any

TUCKER LONG, Jack Long, 04/01/2015 11:06:01

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Instrument Number: 2007019480 Book/Page: 01111/0493 Date Filed: 03/21/2007 14:43:27.00

Book 01111:0493 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00

form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01 (02/01/07)
Page 6 of 13
DocMagic eForms 800-649-1362
www.docmagic.com

TUCKER LONG, Jack Long, 04/01/2015 11:06:02

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Instrument Number: 2007019480 Book/Page: 01111/0494 Date Filed: 03/21/2007 14:43:27.00

Book 01111:0494 Augusta - Richmond County
2007019480 03/21/2007 14:43:27.00

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01 (02/01/07) Page 7 of 13
DocMagic eForms 800-649-1362
www.docmagic.com

TUCKER LONG, Jack Long, 04/01/2015 11:06:03

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate

TUCKER LONG, Jack Long, 04/01/2015 11:06:04

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Instrument Number: 2007012804 Book/Page: 00025/5168 Date Filed: 03/13/2007 11:44:54.00

Form 668 (Y)(c)
(Rev. February 2004)

3225

Department of the Treasury - Internal Revenue Service

# Notice of Federal Tax Lien

Area:
SMALL BUSINESS/SELF EMPLOYED AREA #5
Lien Unit Phone: (800) 829-3903

Serial Number 348139507

For Optional Use by Recording Office

Book 00025:5168 Augusta Richmond County
2007012804 03/13/2007 11:44:54.00
$5.00 FED TAX LIEN
2007012804 Augusta Richmond County

**As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.**

Name of Taxpayer PATRICIA A ENGVOLDSEN

Residence 525 WINCHESTER DR
AUGUSTA, GA 30909-3235

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/1999 | XXX-XX-5572 | 04/03/2006 | 05/03/2016 | 34775.56 |
| 1040 | 12/31/2000 | XXX-XX-5572 | 04/03/2006 | 05/03/2016 | 42424.50 |
| 1040 | 12/31/2001 | XXX-XX-5572 | 04/03/2006 | 05/03/2016 | 12653.98 |
| 1040 | 12/31/2002 | XXX-XX-5572 | 04/03/2006 | 05/03/2016 | 47791.07 |
| 1040 | 12/31/2003 | XXX-XX-5572 | 04/03/2006 | 05/03/2016 | 17011.56 |
| 1040 | 12/31/2004 | XXX-XX-5572 | 04/03/2006 | 05/03/2016 | 31778.48 |

Place of Filing
Clerk of Superior Court
Richmond County
Augusta, GA 30903

Total $ 186435.15

This notice was prepared and signed at DALLAS, TX

the 28th day of February, 2007.

Filed in this office:
Augusta - Richmond County
03/13/2007 11:44:54.00
Elaine C. Johnson

EXHIBIT
C

Signature R. A. Mitchell
for THERESA HARLEY

Title
ACS
(800) 829-3903
25-00-0008

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

**Part 2 - Internal Revenue Service TDA Copy**

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

Elaine C. Johnson, Richmond County Clerk of Superior Court

TUCKER LONG, Jack Long, 04/01/2015 10:42:34

This document is not to scale.

| Post-it® Fax Note 7671 | Date 11/24/14 # of pages ▶ 37 |
|---|---|
| To Robert Tyer | From Ronald Engvoldsen |
| Co./Dept. BayView | Co. |
| Phone # | Phone # 706-564-5642 |
| Fax # 1-305-260-1369 | Fax # |

℗ Robert Tyer
ngo 1 305-260-1369

MAKING HOME AFFORDABLE

Sent as per BKay Herrington US Rep John Barrow

If you are experiencing a financial hardship and need help, you must complete and submit this form along with other required documentation to be considered for foreclosure prevention options under the Making Home Affordable (MHA) Program. You must provide information about yourself and your intentions to either keep or transition out of your property; a description of the hardship that prevents you from paying your mortgage(s); information about **all** of your income, expenses and financial assets; whether you have declared bankruptcy; and information about all the mortgage(s) on your principal residence and other single family real estate that you own. Finally, you will need to return to your loan servicer (1) this completed, signed and dated Request for Mortgage Assistance (RMA); and (2) completed and signed IRS Form 4506-T or 4506T-EZ; and (3) all required income documentation identified in Section 4.

**When you sign and date this form, you will make important certifications, representations and agreements, including certifying that all of the information in this RMA is accurate and truthful.**

## SECTION 1: BORROWER INFORMATION

| BORROWER | | CO-BORROWER | |
|---|---|---|---|
| BORROWER'S NAME: Ronald T Engvoldsen | | CO-BORROWER'S NAME: Patricia A Engvoldsen | |
| SOCIAL SECURITY NUMBER: 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 | DATE OF BIRTH (MM/DD/YY): 09-26-1950 | SOCIAL SECURITY NUMBER: 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 | DATE OF BIRTH (MM/DD/YY): 09/16/43 |
| HOME PHONE NUMBER WITH AREA CODE: none | | HOME PHONE NUMBER WITH AREA CODE: none | |
| CELL OR WORK NUMBER WITH AREA CODE: 706-832-6723 | | CELL OR WORK NUMBER WITH AREA CODE: 706-564-5642 | |
| MAILING ADDRESS: 525 Winchester Dr Augusta Ga 30909 | | MAILING ADDRESS (IF SAME AS BORROWER, WRITE "SAME"): Same | |
| EMAIL ADDRESS: | | EMAIL ADDRESS: pateng19@aol.com | |

Has any borrower filed for bankruptcy? ☐ Chapter 7 ☐ Chapter 13
Filing Date: 8/27/14 Bankruptcy case number: 14-111589
Has your bankruptcy been discharged? ☒ Yes ☐ No

Is any borrower a servicemember? ☐ Yes ☒ No
Have you recently been deployed away from your principal residence or recently received a permanent change of station order? ☐ Yes ☒ No

How many single family properties other than your principal residence do you and/or any co-borrower(s) own individually, jointly, or with others? 0
Has the mortgage on your principal residence ever had a Home Affordable Modification Program (HAMP) trial period plan or permanent modification? ☐ Yes ☒ No
Has the mortgage on any other property that you or any co-borrower own had a permanent HAMP modification? ☐ Yes ☒ No If "Yes", how many? ____
Are you or any co-borrower currently in or being considered for a HAMP trial period plan on a property other than your principal residence? ☐ Yes ☒ No

## SECTION 2: HARDSHIP AFFIDAVIT

I (We) am/are requesting review under MHA.
I am having difficulty making my monthly payment because of financial difficulties created by (check all that apply):

☐ My household income has been reduced. For example: reduced pay or hours, decline in business or self employment earnings, death, disability or divorce of a borrower or co-borrower.

☒ My expenses have increased. For example: monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities or property taxes.

☐ I am unemployed and (a) I am receiving/will receive unemployment benefits or (b) my unemployment benefits ended less than 6 months ago.

☐ My monthly debt payments ar[e] ... with my creditors. Debt inclu[d]... debt.

☒ My cash reserves, including a[ll] ... maintain my current mortgage ... expenses at the same time.

☐ Other:

EXHIBIT D

Explanation (continue on a separate sheet of paper if necessary):
Due to expensive medical bills and higher expenses we can not make payments of the interest escalated to 18% We applied for an completed application and approval of reverse mortgage but could not

Got cooperation from IRS for Reverse Mortgage and Rep John Barrow's office, Augusta, Ga Rep. ... time to hold ... complete ...

Instrument Number: 2015001723 Book/Page: 01470/0994 Date Filed: 01/23/2015 10:54:44.01

Book 01470:0994 Augusta - Richmond County
2015001723 01/23/2015 10:54:44.01

BROCK & SCOTT PLLC

FORECLOSURE & EVICTIONS DIVISION
4360 CHAMBLEE DUNWOODY ROAD SUITE 310
ATLANTA, GA 30341
PHONE: 404-789-2661
FAX: 404-294-0919

EXHIBIT "A"

October 29, 2014

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**Copy Via Regular Mail**
Internal Revenue Service - District Director
Attn: Chief, Special Procedures Staff
401 West Peachtree Street, NW, Room 900
Atlanta, Georgia 30365

**Re:** **NOTICE OF FORECLOSURE SALE**
**File No.** *14-12998*
**Mortgagor(s):** ***Ronald T. Engvoldsen***
**Property Address:** ***525 Winchester Drive***
***Augusta, GA 30909***

Dear District Director:

Please be advised, I am writing to you in accordance with 26 U.S.C. 7425 that The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-SEA1 has instituted foreclosure proceedings against the above-referenced property. The sale is scheduled to take place on *December 2, 2014*. Enclosed is a copy of the Notice of Foreclosure Sale, which is being published in the *Richmond* County legal newspaper. The recording information for the security deed, as well as the terms of sale and additional information can be found in this notice.

The title search of the *Richmond* County records indicates that a federal tax lien has been filed against certain parties thought to be the owners of the subject property. As required, said federal tax lien is recorded in Serial No. *727637410*.

We are not certain that the parties named in the federal tax lien(s) are the same as the above-referenced borrower(s), or other predecessors in title. However, the names and social security numbers of the individual(s) against whom the above-referenced lien(s) are filed are as follows: *Ronald T Engvoldsen*, SSN(s) *7777*.

The unpaid principal balance of the loan against the above-referenced property is approximately *$106,941.07*. Interest through the sale date is approximately *$65,802.45* (the per diem *$30.45*). Attorneys' fees and costs associated with the sale should be approximately *$2,500.00*.

Sincerely,

Enclosures

cc: The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-SEA1

14-12998

EXHIBIT
tabbies
E

This document is not to scale.

TUCKER LONG, Jack Long, 04/01/2015 11:12:08

Elaine C. Johnson, Richmond County Clerk of Superior Court

Book 01470:0995 Augusta - Richmond County
2015001723 01/23/2015 10:54:44.01

**NOTICE OF FORECLOSURE SALE UNDER POWER**

RICHMOND COUNTY, GEORGIA

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Under and by virtue of the Power of Sale contained in a Security Deed given by Ronald T. Engvoldsen to Mortgage Electronic Registration Systems, Inc. as nominee for Castle Point Mortgage, Inc., dated March 16, 2007, and recorded in Deed Book 01111, Page 0488, Richmond County, Georgia Records, as last transferred to The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-SEA1 by assignment recorded on February 21, 2013 in Book 1382 Page 503 in the Office of the Clerk of Superior Court of Richmond County, Georgia Records, conveying the after-described property to secure a Note in the original principal amount of One Hundred Thousand and 0/100 dollars ($100,000.00), with interest thereon as set forth therein, there will be sold at public outcry to the highest bidder for cash before the courthouse door of Richmond County, Georgia, within the legal hours of sale on December 2, 2014, the following described property:

All that lot or parcel of land, with improvements thereon, situate, lying and being in Augusta, Richmond County, Georgia, being shown and designated as Lot 13, Block C, Sections II and III, Waverly Subdivision, on a plat recorded in the Office of the Clerk of Superior Court of Richmond County, Georgia in Realty Book 29-W, Page 540. Reference is hereby made to said plats for a more complete and accurate description as to the metes, bounds, courses, distances and location of said property.

Said property is conveyed subject to Protective Covenants recorded in said Clerk's Office in Realty Book 29-W, Page 537 and as amended and also subject to any and all easements, reservations and restrictions of record.

Map & Parcel #024-2-021-00-0

The debt secured by said Security Deed has been and is hereby declared due because of, among other possible events of default, failure to pay the indebtedness as and when due and in the manner provided in the Note and Security Deed. The debt remaining in default, this sale will be made for the purpose of paying the same and all expenses of this sale, as provided in Security Deed and by law, including attorney's fees (notice of intent to collect attorney's fees having been given).

Your mortgage servicer can be contacted at (800) 771-0299 - Loss Mitigation Dept, or by writing to 5th Floor Merrick Park Plaza, 4425 Ponce De Leon Blvd, Coral Gables, Florida 33146, to discuss possible alternatives to avoid foreclosure.

Said property will be sold subject to any outstanding ad valorem taxes (including taxes which are a lien, but not yet due and payable), any matters which might be disclosed by an accurate survey and inspection of the property, any assessments, liens, encumbrances, zoning ordinances, restrictions, covenants, and matters of record superior to the Security Deed first set out above.

To the best knowledge and belief of the undersigned, the party in possession of the property is Ronald T. Engvoldsen or tenant(s); and said property is more commonly known as **525 Winchester Drive, Augusta, GA 30909.**

The sale will be conducted subject to (1) confirmation that the sale is not prohibited under the U.S. Bankruptcy Code (2) final confirmation and audit of the status of the loan with the holder of the security deed and (3) any right of redemption or other lien not extinguished by foreclosure.

The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-SEA1 as Attorney in Fact for Ronald T. Engvoldsen.

Brock & Scott, PLLC
4360 Chamblee Dunwoody Road
Suite 310
Atlanta, GA 30341
404-789-2661
B&S file no.: 14-12998

14-12998

TUCKER LONG, Jack Long, 04/01/2015 11:12:09

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Book 01470:0996 Augusta - Richmond County
2015001723 01/23/2015 10:54:44.01

Number

7266 9904 2006 5195 74

ce Type CERTIFIED MAIL®
icted Delivery? *(Extra Fee)* Yes
e Addressed to:
14-12998 GA

rnal Revenue Service - District Director
: Chief - Special Procedures Staff
W. Peachtree St. NW, Room 900
nta, GA 30365

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly) Bill Allen
B. Date of Delivery 10/31/14
C. Signature
x Bill Allen
Agent
Addressee
D. Is delivery address different from item 1? Yes
If YES, enter delivery address below: No

m 3811, January 2005 Domestic Return Receipt

Filed in this office:
Augusta - Richmond County
01/23/2015 10:54:44.01
Elaine C Johnson
Clerk of Superior Court

TUCKER LONG, Jack Long, 04/01/2015 11:12:09

Elaine C. Johnson, Richmond County Clerk of Superior Court

Instrument Number: 2015001723 Book/Page: 01470/0993 Date Filed: 01/23/2015 10:54:44.01

Book 01470:0993 Augusta - Richmond County
2015001723 01/23/2015 10:54:44.01
$18.00 AFFIDAVIT
2015001723 Augusta - Richmond County

TUCKER LONG, Jack Long, 04/01/2015 11:12:07

Elaine C. Johnson, Richmond County Clerk of Superior Court

Return to:
Brock & Scott, PLLC
4360 Chamblee Dunwoody
Road Suite 310
Atlanta, GA 30341
404-789-2661

Cross Index Security Deed:
Book: 01111
Page: 0488
County: Richmond

STATE OF: GEORGIA
COUNTY OF: Richmond

## AFFIDAVIT

Personally appeared before me, the undersigned attesting officer, who, after being duly sworn, deposes and states as follows:

That Brock & Scott, PLLC as counsel for The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-SEA1 discovered a Federal Tax Lien filed against Ronald Envoldsen as filed in Book 36, Page 8222, Richmond County Court Records.

Pursuant to Internal Revenue Code 7425(c), on October 29, 2014, Brock & Scott, PLLC as counsel for The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-SEA1 did give notice to the District Director of the Internal Revenue Service, Special Procedures Section.

That on December 2, 2014, during the legal hours of sale, The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-SEA1 as attorney-in-fact for Ronald T. Engvoldsen, exercised the Power of Sale contained in that certain Security Deed from Ronald T. Engvoldsen to Mortgage Electronic Registration Systems, Inc. as nominee for Castle Point Mortgage, Inc., dated March 16, 2007, and filed of record on March 21, 2007, recorded in Book 01111 at Page 0488, Richmond County Land Records.

This Affidavit and the attached Exhibit A are filed pursuant to Section 17-4 of the State Bar of Georgia Title Standards.

January Paylor
Brock and Scott, PLLC
4360 Chamblee Dunwoody Road Suite 310
Atlanta, GA 30341
Phone: 404-789-2661
Fax: 404-294-0919

Sworn to and subscribed before me
This the 13 day of Jan, 2015.

Notary Public
My Commission Expires: 11/11/18

14-12998

THEY LAN BURKHALTER
MY COMMISSION EXPIRES
NOV. 11, 2018
FULTON CO., GEORGIA
NOTARY PUBLIC

Book 01470:0990 Augusta - Richmond County
2015001722 01/23/2015 10:54:44.00
$16.00 FORECLOSURE
2015001722 Augusta - Richmond County

TUCKER LONG, Jack Long, 04/01/2015 11:10:50

Elaine C. Johnson, Richmond County Clerk of Superior Court

Return to:
Brock & Scott, PLLC
4360 Chamblee
Dunwoody Road Suite
310
Atlanta, GA 30341

Cross index Security Deed:
Book: 01111
Page: 0488
County: Richmond

STATE OF: ~~GEORGIA~~ Florida
COUNTY OF: ~~RICHMOND~~ Miami-Dade.

## DEED UNDER POWER OF SALE

THIS INDENTURE, made this 2nd day of December, 2014, by Ronald T. Engvoldsen (hereinafter collectively referred to as "Grantor(s)"), acting through this duly appointed attorney in fact, The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-SEA1 (hereinafter referred to as "Lender"), as Party of the First Part, and The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-SEA1, whose address is C/O Bayview Loan Servicing, Coral Gables, FL 33146, as Party of the Second Part:

WITNESSETH:

WHEREAS, Grantor(s) executed and delivered that certain Security Deed given to Mortgage Electronic Registration Systems, Inc. as nominee for Castle Point Mortgage, Inc., dated March 16, 2007 and recorded on March 21, 2007 in Book 01111 at Page 0488, Richmond County, Georgia Records, as last transferred to The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-SEA1by assignment, recorded in Deed Book 1382 , Page 503, Richmond County, Georgia Records, conveying the after-described property to secure a Note in the original principal amount of One Hundred Thousand Dollars and No Cents ($100,000.00);

WHEREAS, default in the payment of the required installments under said Note occurred, and by reason of said default, Lender elected, pursuant to the terms of the Security Deed and Note, and declared the entire principal and interest immediately due and payable; and

14-12998

EXHIBIT
tabbies
F

Book 01470:0991 Augusta - Richmond County
2015001722 01/23/2015 10:54:44.00

WHEREAS, said entire indebtedness still being in default, Lender on behalf of Grantor(s), and according to the terms of said Security Deed, did advertise said property for sale once a week for 4 weeks immediately preceding said sale in a newspaper in Richmond County, Georgia, wherein the Sheriff carried his advertisements, namely the Augusta Chronicle; and

WHEREAS, notice was given in compliance with Georgia Laws 1981, Volume I, Page 834, codified as O.C.G.A. Section 44-14-162.2 and Section 44-14-162.4. The notice so required was rendered by mailing a copy of the Notice of Sale submitted to the publisher to the "Debtor" (as that term is defined in O.C.G.A. Section 44-14-162.1) at least thirty days prior to the foreclosure sale date of December 2, 2014; and

WHEREAS, Lender did expose said property for sale to the highest bidder for cash on the first Tuesday in December, 2014 within the legal hours of sale at the usual place for conducting Sheriff's sales in Richmond County before the Courthouse door, and offered said property for sale at public outcry to the highest bidder for cash when and where the aforesaid Party of the Second Part bid; AND

WHEREAS, the said property was knocked off to the Party of the Second Part for consideration in the amount of $196,678.10.

NOW THEREFORE, in consideration of the premises and said sum of money and by virtue of and in the exercise of the power of sale contained in the Security Deed, the Party of the First Part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the Party of the Second Part, said party's representatives, heirs, successors and assigns, the following described property:

All that lot or parcel of land, with improvements thereon, situate, lying and being in Augusta, Richmond County, Georgia, being shown and designated as Lot 13, Block C, Sections II and III, Waverly Subdivision, on a plat recorded in the Office of the Clerk of Superior Court of Richmond County, Georgia in Realty Book 29-W, Page 540. Reference is hereby made to said plats for a more complete and accurate description as to the metes, bounds, courses, distances and location of said property.

Said property is conveyed subject to Protective Covenants recorded in said Clerk`s Office in Realty Book 29-W, Page 537 and as amended and also subject to any and all easements, reservations and restrictions of record.

Map & Parcel #024-2-021-00-0

Tax parcel: 024-2-021-00-0
Street Address: **525 Winchester Drive, Augusta, GA 30909**

TOGETHER WITH all and singular the rights, members and appurtenances thereto appertaining; also all the estate, right, title, interest, claim or demand of the Party of the First Part, or said Party's representatives, heirs, successors and assigns, legal, equitable or otherwise, whatsoever, in and to the same.

THIS CONVEYANCE IS SUBJECT TO any outstanding ad valorem taxes (including taxes which are a lien, but not yet due and payable), any matters which might be disclosed by an accurate survey and inspection of the property, any assessments, liens, encumbrances, zoning ordinances,
14-12998

TUCKER LONG, Jack Long, 04/01/2015 11:10:51

Elaine C. Johnson, Richmond County Clerk of Superior Court

This document is not to scale.

Book 01470:0992 Augusta - Richmond County
2015001722 01/23/2015 10:54:44.00

restrictions, covenants, and matters of record superior to the Security Deed.

TO HAVE AND TO HOLD the said property and every part thereof unto the said Party of the Second Part, and said party's representatives, heirs, successors and assigns, to said Party's own proper use, benefit and behoof in FEE SIMPLE, in as full and ample a manner as the said Party of the First Part or said Party's representatives, heirs, successors and assigns, did hold and enjoy the same.

IN WITNESS WHEREOF, Lender as Agent and Attorney in Fact for Grantor(s) has hereunto affixed Lender's hand and seal as of the day and year first above written.

The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-SEA1
by Bayview Loan Servicing as attorney in fact
as Attorney in Fact for
Ronald T. Engvoldsen

Signed, sealed and delivered in the presence of:

Julieth Salvatierra
Witness

Anthony C. Welch
Notary Public

My Commission Expires: 4.24.18

(Notary Seal)

ANTHONY C. WELCH
Notary Public - State of Florida
My Comm. Expires Apr 24, 2018
Commission # FF 116427

By #1: [signature]
Print Name: Sonia Asencio
Assistant Secretary
Title:
By #2: [signature]
Print Name: Elva Neumann
Title: Senior Vice President.

(CORPORATE SEAL)

14-12998

Filed in this office:
Augusta - Richmond County
01/23/2015 10:54:44.00
Elaine C Johnson
Clerk of Superior Court

TUCKER LONG, Jack Long, 04/01/2015 11:10:52

Elaine C. Johnson, Richmond County Clerk of Superior Court

STATE OF GEORGIA )
)
COUNTY OF RICHMOND )

**VERIFICATION**

Personally appeared before the undersigned attesting authority, duly authorized to administer oaths, RONALD T. ENGVOLDSEN, who after first being duly sworn, states that he has read the attached *Complaint*, and the facts contained therein are true and correct.

This 12th day of May, 2015.

Sworn to and subscribed before me )
this 12th day of May, 2015. )
)
[signature] )
Notary Public, Richmond County, )
State of Georgia )

My Commission Expires: )
Notary Public, Richmond County, Georgia
My Commission Expires Jan. 19, 2016 )

SANDRA O. WILLIAMS NOTARY PUBLIC RICHMOND COUNTY, GA

[signature]
RONALD T. ENGVOLDSEN

STATE OF GEORGIA )
)
COUNTY OF RICHMOND )

**VERIFICATION**

Personally appeared before the undersigned attesting authority, duly authorized to administer oaths, PATRICIA ENGVOLDSEN, who after first being duly sworn, states that she has read the attached *Complaint*, and the facts contained therein are true and correct.

This 12 day of May, 2015.

SANDRA O. WILLIAMS NOTARY PUBLIC RICHMOND COUNTY GA

Sworn to and subscribed before me )
this 12th day of May, 2015. )
)
[signature] )
Notary Public, Richmond County, )
State of Georgia )

My Commission Expires: )
Notary Public, Richmond County, Georgia )
My Commission Expires Jan. 19, 2016

[signature]
PATRICIA ENGVOLDSEN

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all parties in this case with a copy of the foregoing *Complaint* in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

This 14th day of May, 2015.

/s/ ***JOHN B. LONG***

JOHN B. LONG, ESQ.
Georgia State Bar No. 457200
Attorney for Plaintiffs

OF COUNSEL:

TUCKER LONG, P.C.
P. O. BOX 2426
453 GREENE STREET
AUGUSTA, GA 30903
(706) 722-0771
(706) 722-7028 Fax